IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

ANDREA URSULA CARRUTHERS,

                Respondent,

and

STEPHEN CARRUTHERS,

                Appellant.

No. 84290-1-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Stephen Carruthers appeals the trial court's distribution of marital property and award of attorney fees to Andrea Carruthers. He contends the trial court abused its discretion in awarding the marital residence to Andrea and claims the distribution was an unfair penalty based on unsupported findings. Because Stephen fails to demonstrate any error and sufficient evidence supports the trial court's findings, we affirm.

## FACTS

Andrea Carruthers and Stephen Carruthers[1] were married on August 16, 2002. They have two children together. On March 1, 2021, Andrea filed a petition for divorce in which she requested a parenting plan, child support, and an equitable division of the parties' real and personal property. Andrea also sought attorney

_____

[1] For clarity, this opinion refers to the parties by their first names. No disrespect is intended.

fees and costs related to the matter. The case proceeded to a bench trial, which was held on June 27 and 28, 2022. The court heard testimony from Penny Crowe, a licensed real estate appraiser, Holly Bernard, a family evaluator and conciliation specialist at Family Court Services in King County Superior Court, as well as Andrea, who was represented by counsel, and Stephen, who represented himself.

At trial, the only disputed asset was the family home. As an expert witness, Crowe valued the home at $640,000 and provided a 27-page appraisal report. To determine the value of the home, Crowe explained that she began with the "most recent tax appraisal, performed research about similar properties nearby, toured the property in-person, interviewed [Andrea] about the property, and then toured other properties in the Maple Hills neighborhood to identify three of the most similar properties." Crowe also testified that, in response to her appraisal, Stephen sent her an email stating that if she did not change the value, he was "going to file a malpractice lawsuit against [her]." The trial court found Crowe to be credible. On cross-examination, Stephen attempted to admit an appraisal report that he had obtained from another appraiser and a document titled "Zillow Comparables," but the trial court ruled that both were inadmissible.

Bernard provided expert testimony as the family evaluator and her report was admitted into evidence. She explained that she was unable to interview Stephen or observe his home "because he elected not to participate in the evaluation." Bernard recommended restrictions on Stephen "based on abusive use of conflict" because he "involved the children in litigation and took actions to prolong litigation." She provided corroborating information regarding Stephen's

"negative emails during litigation and insight about the wishes of the children." Bernard recommended no "other limitations or restrictions against either parent." The trial court found her testimony credible.

Andrea testified that she met Stephen in the Netherlands while she was still in college, and after she finished her degree, she returned to her "home state, Washington." Thereafter, Stephen moved to Seattle, and on April 16, 2002, the two were married. At the time of trial, Andrea was unemployed and actively searching for work. She explained that, when she was last employed in 2021, Stephen sent her employer multiple direct emails making false accusations that she had been stealing from the company. Andrea confirmed that her monthly expenses were $4,241. The trial court found Andrea's testimony regarding her financial circumstances to be credible.

When asked about Stephen's financial declaration, which the trial court admitted into evidence, Andrea testified that Stephen had identified business income without providing any documentation on the business. Further, Stephen's response to interrogatories showed that he answered "not applicable" to the question of whether he had "engaged, invested money in, or received profits from any business, venture, or self-employment arrangement of any kind." In response to another interrogatory that asked whether Stephen held a claim in interest in any financial accounts, he answered, "Andrea and I have already decided that the only asset to consider here is the house that we jointly own so this section is not needed." Andrea testified that Stephen did not respond to a request for production sent by her counsel for "all statements from the date of cohabitation to present" for

any account to which Stephen made a separate property claim, in whole or in part. Andrea explained that, as a result, she sent subpoenas to various financial institutions attempting to obtain Stephen's financial records. She also testified that Stephen was not current on child support payments, and, when the State started to enforce the child support order, Andrea attempted to discover the source of his payments, but was unable to.

Andrea requested the family home be awarded to her. In support of her request, Andrea asserted that her mother had taken out a second mortgage on her own home in order to loan Stephen and Andrea the funds to purchase their family home in 2005. The balance on her mother's second mortgage was $58,674 which both Andrea and Stephen were responsible for, based on the agreement the parties reached in 2005. The mortgage on the family home had an outstanding principal of $161,944. In addition to an award of the home, Andrea also requested attorney fees, which she asserted were approximately $20,000 at the time of trial.

Stephen sought an order authorizing sale of the family home and even division of the proceeds. He characterized the "litigation as abusive" and testified that he had "told the truth" and supplied complete disclosures of discovery requests. Stephen also addressed the matter of child support and admitted that he did not make any payments for a four-month period in 2021 but "then paid it in full in January" 2022. He asserted that he "d[id] not have any hidden bank accounts" and noted that only one credit account in Idaho remained active. He then testified that he had a company, "Primus Financial," which had been "dormant

for the past ten years." Regarding the business income he had acknowledged in court documents, Stephen explained,

> I just meant my general income, which I'm—I'm self-sustaining from my—my private investments which one day, if they get large enough again, I will push over into business activity. But at the minute they're not large enough to merit business activity, so—so even though I might have made that mistake and said it was business activity, it is not business activity. It's personal—personal income.

He emphasized that he "had no hidden money" and had been "very honest and forthright about [his] finances." Stephens confirmed that he had monthly income of $3,000 from his personal investments. When asked what account that money was coming from, he testified that "[t]he Robinhood[2] account is the main thing" and explained "there is now only about $10,000 left in it."

On July 8, 2022, the trial court entered the final orders dissolving the marriage, setting the parenting plan and child support, and awarding the family home to Andrea in its division of the assets and debts. Though no money judgment was awarded, the court explained, "The husband should pay the wife's attorney's fees due to his intransigence but the court does not believe the husband will pay voluntarily. As such, the wife is awarded a greater share of the community assets to compensate her for the fees husband has caused." The court also entered detailed findings of fact and conclusions of law in support of its various orders.

Stephen timely appealed.

---

[2] "Robinhood" is an internet-based stock trading platform.

ANALYSIS

I.    Award of Marital Residence

Stephen assigns error to the trial court's award of the marital residence to Andrea as separate property.[3]    According to Stephen, the trial court "unfairly penalized" him because, he contends, its decision was "solely based" on his "alleged discovery violations."  We disagree.

"A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." *In re Marriage of Wright,* 179 Wn. App. 257, 261, 319 P.3d 45 (2013). To make a "just and equitable" distribution pursuant to RCW 26.09.080, trial courts are required to consider "all relevant factors," including the following: "(1) The nature and extent of the community property; (2) The nature and extent of the separate property; (3) The duration of the marriage or domestic partnership; and (4) The economic circumstances of each spouse."  A trial court need not make an equal distribution of marital property.  *In re Marriage of DewBerry*, 115 Wn. App. 351, 366, 62 P.3d 525 (2003).  "An equitable division of property does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties."  *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996).

---

[3] While he attempts to broadly challenge the trial court's findings of fact, his sole assignment of error does not include reference to any "finding by number" as required by RAP 10.3(g).  Accordingly, as explained herein, the unchallenged findings of fact are verities on appeal. *In re Marriage of Rounds*, 4 Wn. App. 2d 801, 804, 423 P.3d 895 (2018).

As the "trial court is in the best position to decide issues of fairness," we "will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion." *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013); *Wright,* 179 Wn. App. at 261. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*Id.* at 47. "A trial court's factual findings are accepted if supported by substantial evidence," which is "'evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *Wright*, 179 Wn. App. at 262; *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007) (quoting *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). Unchallenged findings of fact are verities on appeal. *In re Marriage of Rounds*, 4 Wn. App. 2d 801, 804, 423 P.3d 895 (2018). "Where the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law." *Rockwell,* 141 Wn. App. at 242.

Stephen contends the trial court's distribution of the marital home to Andrea was an abuse of discretion because "the court's findings are not supported by the record." To challenge a trial court's finding of fact on appeal, counsel must present "argument as to why specific findings of the trial court are not supported by the

evidence and to cite to the record to support that argument." *In re Est. of Lint,* 135 Wn.2d 518, 532, 957 P.2d 755 (1998). With the exception of three "findings," which are more accurately characterized as legal conclusions, Stephen fails to adequately challenge the trial court's findings of fact and, thus, we accept the vast majority of the trial court's extensive findings as verities. *See Id.* at 531-32; *see also Starczewski v. Unigard Ins. Grp.,* 61 Wn. App. 267, 276, 810 P.2d 58 (1991).

Stephen points to the following two findings and claims that they show the trial court awarded the family home to Andrea "as punishment for his alleged non-compliance" with discovery.

> **f.** Each party has an overall burden of proof to persuade the trier of fact on the factual issues. It is possible to draw an inference, or conclusion, upon proof or lack of proof of certain facts. Whenever a party willfully violates a discovery rule, the trier of fact may draw a negative inference to ensure that the wrongdoer does not profit from the wrong. *See Burnet v. Spokane Ambulance,* 131 Wn.2d 484, 496-97, 933 P.2d 1036 (1997). [Stephen] did not make a full and fair disclosure per court rules. It is not enough for [Stephen] to simply contradict [Andrea]'s arguments about his financial circumstances, he owed and continues to owe a full disclosure. One reasonable inference from [Stephen]'s failure to make a full disclosure when he knew he was required to make a full disclosure *and* he was given sufficient time to make a full disclosure is [Stephen] has more financial resources than he cares to disclose. The only other reasonable inference is [Stephen] feels the court rules should not apply to him. Either way, it is fair to conclude [Stephen]'s discovery evasion was intentional and consequently the [c]ourt does not have adequate information about [Stephen] financial circumstances to know how much or how little financial resources are available to him.

> **g.** The family home is community property. Generally, the [c]ourt agrees with [Stephen] it is appropriate to make an equal distribution of assets and debts during a dissolution. Under these circumstances, however, the [c]ourt agrees with [Andrea] a disproportionate award is fair. [Andrea] shall have the family home.

Stephen does not challenge these findings as unsupported; instead, he simply states that they show "the court's rationale for the disproportionate property division was to sanction [him] for discovery violations."[4]  However, the court found only that his "discovery evasion was intentional" and, as a result, it had inadequate information "to know how much or how little financial resources are available to him."  Even assuming arguendo that the trial court did draw an adverse inference, which is not established by this finding, the trial court may "properly consider a spouse's waste or concealment of assets" when making a property distribution.[5] *In re Marriage of Wallace*, 111 Wn. App. 697, 708, 45 P.3d 1131 (2002). Additionally, courts are not required to distribute property equally.  *DewBerry,* 115 Wn. App. at 366.

The following findings are unchallenged and therefore verities on appeal:

**b.** The only disputed asset during trial was the family home. The [c]ourt is adopting Ms. Crowe's appraised value of $640,000, and then subtracting the mortgage, promissory note, and lien for net value proposed by [Andrea]: $354,482.

. . .

**d.** [Andrea] requests the family home, including all value in the home, be solely awarded to her. First, [Andrea] argues [Stephen] is not likely to follow any court orders obligating him to pay attorney fees or child support. Second, she argues the [c]ourt should draw an adverse inference from [Stephen]'s failure to participate in discovery and produce sufficient evidence about his financial circumstances. [Andrea] argues [Stephen] *could* have access to assets or large

---

[4] Stephen baldly asserts the trial court did not base its decision on consideration of the enumerated factors of RCW 26.09.080.  This is refuted by the trial court's unchallenged written finding 4.a. in which it cited RCW 26.09.080 as requiring trial courts to "make such disposition of the property . . . as shall appear just and equitable after considering all relevant factors."

[5] In an apparent attempt to justify his failure to fully comply with discovery requirements at trial, Stephen repeatedly points out that he represented himself and was unfamiliar with the rules. However, "[a] trial court must hold pro se parties to the same standards to which it holds attorneys." *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010).  Thus, Stephen's lack of familiarity with discovery procedures is immaterial to our analysis.

sums of money that he has not disclosed. Third, [Andrea] argues [Stephen] contributed to her employment termination, and thus her limited financial resources, by sending negative emails to her employer. Finally, [Andrea] argues [Stephen] *could* effectively make himself judgment proof by leaving the country.

**e.** [Stephen] believes he fully complied with discovery to the best of his ability as someone without any legal training, and any omission was unintentional or in keeping with the side-agreement for each party to keep any and all assets held in their own name regardless of when the assets were acquired or the value of such assets, which [Stephen] believes was mutually agreed upon at the beginning of this matter.

The trial court entered further findings concerning the parties' finances that are also unchallenged. The court found that Andrea had not been employed since October 2021 and that she was "living on her severance package, unemployment, and food benefits for the children." The court found "her testimony was credible about her financial circumstances" and "efforts to find a new job." Regarding Stephen's finances, the court found he "has a portfolio balance of $11,874.44 on Robinhood" and noted that he "testified he has an unnamed business partner, but has closed his business for now." Further, the trial court also found that Andrea credibly testified that Stephen "has not paid certain other expenses for the children relating to medical care."

As noted, the trial court's award of the marital residence to Andrea was based, in part, on its ruling directing Stephen to pay Andrea's attorney fees "due to his intransigence." The court explained that it did "not believe [Stephen] would pay voluntarily," and thus, it awarded Andrea "a greater share of the community assets to compensate her for the fees [Stephen] caused."[6]

---

[6] The record before us does not include any reference to an amount of attorney fees granted by the trial court, its method of calculation, or other findings as to the distribution of the

The trial court entered five findings of fact in support of its order on attorney fees; Stephen only challenges one, finding 8.e., and contends the order "is an abuse of discretion because it is not supported by the record." The challenged finding provides:

> **e. In summary,** the [c]ourt is granting [Andrea]'s request for attorney fees. The [c]ourt initially expected to enter a separate fee award and provided draft orders to the parties in keeping with its expectation. The [c]ourt requested an updated attorney fee declaration to include costs and fees for trial. After listening to the concerns raised during the presentation of final orders, considering the updated attorney fee declaration, and reflecting on these findings and conclusions, the [c]ourt finds it is fair to grant [Andrea]'s request for attorney fees in the form of the disproportionate property award. The net value of the home is sufficient to pay the attorney fees and avoid unjust enrichment per paragraph 4 ("Property and Debt") above.

Stephen contends the trial court erred by awarding attorney fees without considering his ability to pay as required by RCW 26.09.140. However, intransigence, which is "demonstrated by litigious behavior, bringing excessive motions, or discovery abuses," is a separate basis for attorney fees and once it is established, the court need not consider the party's ability to pay. *Wallace*, 111 Wn. App. at 710. Stephen next asserts "there is no overwhelming evidence of intransigence" to justify the award of marital property to Andrea. He offers no authority holding evidence of intransigence must be "overwhelming" in order to support an award of fees on this basis.

The trial court's finding of intransigence and award of attorney fees in the form of the marital property is supported by the following unchallenged findings, now verities on appeal:

---

marital home in place of a separate fee award. However, in the absence of any assignment of error from Stephen on these matters, we need not consider those aspects of the court's ruling.

**a. Legal Standard.** In addition to the statutory factors of need and ability, the court may consider whether the intransigence or other conduct of a spouse caused the other spouse to incur additional attorney's fees, professional services, and other costs of litigation. Even if a spouse has the ability to pay fees and litigation expenses, the intransigent conduct of the other spouse may bring about an award of fees and litigation expenses. The award, however, should be limited to the amount needed to compensate the opposing party for the intransigence. In this case, it is not possible to segregate the amount of [Andrea]'s attorney's fees attributable to [Stephen]'s intransigence because it permeates the litigation. *See Buchanan v. Buchanan,* 150 Wn. App. 730, 207 P.3d 478 (Div. 3 2009), *In re Marriage of Irwin,* 64 Wn. App. 38, 822 P.2d 797 (Div. I 1992)

**b. Discovery abuse.** [Stephen] was asked to answer interrogatories and requests for production. Exhibit 71. The questions include requests for information about self-employment and business enterprises, financial accounts, and property. *Id.* [Stephen] did not provide full responses. *Id.* "N/A" and not relevant are not full responses. *Id.* Subpoenas were sent to financial institutions. Exhibit 40. It appears the financial institutions targeted for subpoenas were institutions that sent mail addressed to [Stephen] at the family home or left in the family home because [Andrea] did not have any other information. Exhibits 57, 58, 60, 61. The financial institutions, located in other states or countries, often failed to respond. [Andrea] repeatedly sought financial documents from [Stephen]. Exhibit 44. [Stephen] testified he understood requests were made for discovery, but he believed he had no obligation to provide discovery after he retracted his last settlement offer around May 2022. *Id.* He did not explain his failure to answer these requests before May 2022 or while his offer was pending. Based on the record presented it appears more likely than not [Stephen] failed to provide any supporting financial documents until 14 days before trial some documents were uploaded to the ShareFile.[7] As a result of [Stephen]'s discovery abuse, [Andrea] could not make an accurate decision or rational choices to request relief and/or resolve issues in dispute.

**c. Obstruction.** Several examples were provided of obstruction by [Stephen]. [Andrea] testified [Stephen] transferred some stimulus funds to [Andrea] via the joint account, but then withdrew the amounts from the account. [Stephen] testified he transferred the funds, and then withdrew the funds to prove a point because he was accused of not transferring the accounts. [Andrea] testified [Stephen] was ordered to pay a share of the children['s] healthcare and school fees, but failed to pay. She also testified [Stephen] stopped paying

---

7 "ShareFile" is an internet-based file-sharing platform.

child support. [Andrea] enrolled the children in public health care programs and signed up for food benefits to support the children. [Stephen] testified he intentionally withheld child support for a period of time after [Andrea] cancelled the second mediation as retaliation for "being difficult" about the mediation. He testified he is current on child support, except for one month when he could not pay due to technical error on the agency side. He also argued he coordinates his parenting time directly with the children, meeting them after school without [Andrea]'s knowledge and in violation of the residential provisions set forth in court orders.

**d. Unnecessary, Insulting Communication.** [Stephen] frequently sent unnecessary, insulting communication to [Andrea]'s attorney. The volume of communication makes it impossible to segregate legitimate communication about litigation from unnecessary, insulting communication.

This evidence is substantial and plainly supports the trial court's finding that Stephen was intransigent during the dissolution proceedings. Moreover, the plethora of unchallenged findings support the conclusion that it was fair to award Andrea attorney fees in the form of the disproportionate property award. Because Stephen fails to demonstrate the trial court manifestly abused its discretion in awarding the home to Andrea pursuant to RCW 26.09.080, we affirm the trial court's distribution of property. *See Wright,* 179 Wn. App. at 261*.*

II.     Attorney Fees on Appeal

Andrea requests an award of attorney fees on appeal and offers several alternate bases for her claim: consideration of her financial resources pursuant to RCW 26.09.140, a determination of intransigence on appeal, and a conclusion that Stephen's appeal was frivolous under RAP 18.9. Pursuant to RCW 26.09.140, this court has discretion to "order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Based

on her financial need, we award Andrea reasonable fees incurred in responding to this appeal under RCW 26.09.140 and RAP 18.1, contingent upon her compliance with the procedural requirements of the RAP. Because we award fees on that basis, we need not reach Andrea's arguments regarding frivolous appeal or intransigence.

Affirmed.

WE CONCUR: