# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69133-3-I |
| | ) | |
| MARY M. WRIGHT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | ORDER DENYING MOTION |
| | ) | FOR RECONSIDERATION AND |
| KIM B. WRIGHT, | ) | MOTION TO TAKE ADDITIONAL |
| | ) | EVIDENCE AND GRANTING |
| Appellant. | ) | MOTION TO PUBLISH OPINION |
| | ) | |

Appellant filed a motion for reconsideration of the court's opinion filed December 16, 2013 along with a motion to take additional evidence or, in the alternative, to publish the court's opinion. Respondent filed a response to the motions. After consideration of the motions and response, the panel has determined that the motion for reconsideration and to take additional evidence should be denied and the motion to publish should be granted.

Now therefore, it is hereby

ORDERED that appellant's motion for reconsideration is denied; it is further

ORDERED that appellant's motion to take additional evidence is denied; it is further

ORDERED that appellant's motion to publish is granted.

Done this 3rd day of February, 2014.

FOR THE PANEL:

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69133-3-I |
| | ) | |
| MARY M. WRIGHT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KIM B. WRIGHT, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 16, 2013 |
| | ) | |

VERELLEN, J. — Dr. Kim Wright appeals the property distribution and maintenance order in the dissolution of his 30-plus year marriage to Mary Wright. We conclude that (1) The property distribution was within the trial court's discretion; (2) ample evidence supports the trial court's determination of the date the Wrights separated; (3) the trial court correctly applied Washington law in valuing the surgical practice's goodwill, and soundly exercised its discretion in distributing the Wright's community interest in the practice; (4) Dr. Wright waived the issue of whether certain assets were his separate property; and (5) the award of spousal maintenance was an appropriate exercise of the trial court's discretion. We affirm the trial court's property distribution and provision of maintenance, and deny Dr. Wright's request for attorney fees on appeal.

FACTS

Ms. Wright petitioned for dissolution in April 2011. The issues before the trial court were child support, spousal maintenance, and the distribution of assets.[1] The Wrights agreed to the terms of a parenting plan and the values of most assets.[2] Following trial, the court entered a decree of dissolution and distributed the property.

The court awarded Ms. Wright $8,526,834 in community property, a $1.7 million equalizing payment, and $1 million in spousal maintenance spread over three years. The court awarded Dr. Wright $8,657,042 in community property and $979,966 in separate property, less the $1.7 million equalizing payment. The court determined that Dr. Wright would work for a minimum of 2.5 years after the dissolution, and earn a minimum of $4 million annually.

Dr. Wright appeals.

ANALYSIS

A trial court in dissolution proceedings has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080.[3] The court may distribute all property, whether categorized as community or separate.[4]

---

[1] The Wrights had eight children together, seven of whom were emancipated adults by the time of the May 2012 trial.

[2] Dr. Wright does not appeal from the value the court assigned to the family home, the only asset value the parties did not stipulate to before trial.

[3] Under RCW 26.09.080, the trial court is to make a distribution of property that is just and equitable after consideration of all relevant factors, including but not limited to, (1) The nature and extent of the community property; (2) the nature and extent of the separate property; (3) the duration of the marriage; and (4) the economic circumstances of each spouse at the time the division of property is to become effective.

[4] In re Marriage of Konzen, 103 Wn.2d 470, 477-78, 693 P.2d 97 (1985); In re Marriage of Irwin, 64 Wn. App. 38, 48, 822 P.2d 797 (1992).

This court will affirm unless an appellant demonstrates that the trial court manifestly abused its discretion.[5] This occurs if the trial court's decision is manifestly unreasonable, or based on untenable grounds or reasons.[6] A trial court's factual findings are accepted if supported by substantial evidence.[7]

### Property Distribution: Roughly Equal Positions

Dr. Wright first contends that the trial court abused its discretion because its property distribution did not leave the parties in "roughly equal" positions. This is so, Dr. Wright argues, because Ms. Wright received more tangible and liquid assets, on the basis that Dr. Wright would earn at least $10 million postdissolution. Dr. Wright fails to demonstrate that the trial court abused its discretion.

A trial court is not required to place the parties in precisely equal financial positions at the moment of dissolution.[8] Rather, if the spouses were in a long-term marriage of 25 years or more, the court's objective is to place the parties in roughly equal financial positions for the rest of their lives.[9] To reach this objective, the court may account for each spouse's anticipated postdissolution earnings in its property distribution by looking forward. In In re Marriage of Rockwell, this court approved a property award that provided more amply for the wife, who was six years older than her

---

[5] In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999) (trial court is in the best position to determine what is fair under the circumstances); In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009).

[6] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[7] In re Marriage of Thomas, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). An appellate court should "not substitute [its] judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

[8] In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001).

[9] In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007).

husband and in ill health, where the court determined that the husband would make up the difference through at least seven years of anticipated postdissolution employment earnings.[10]

Rockwell supports the trial court's property division in this case. Dr. Wright argues the court awarded property valued at $8,657,042 to Dr. Wright and $8,526,834 to Ms. Wright, then applied an equalizing payment and three years of spousal maintenance to Ms. Wright, leaving an immediate imbalance of $3,369,196 in her favor. But, looking forward as is required in a long-term marriage, the trial court also determined that Dr. Wright would earn at least $10 million in 2.5 years after dissolution. On this basis, Dr. Wright would ultimately end up with nearly $2.7 million more than Ms. Wright in the long run. The trial court's determinations are amply supported by the evidence adduced at trial. Dr. Wright fails to demonstrate that the property division left him in an inferior position to Ms. Wright for the rest of their lives, much less that the trial court abused its discretion.

Dr. Wright's assertion that the property division was unfair because Ms. Wright received more of the "tangible" and "liquid" assets than he did is not persuasive. Dr. Wright expressly requested certain high-value items with a combined net value of $7.75 million, including four airplanes, the surgical practice, and investment and real property acquired after he moved to Alaska. The trial court's property division accommodated his requests. It was entirely reasonable for the trial court to award Ms. Wright the assets it did in order to make the division just and equitable. Dr. Wright fails to persuasively demonstrate that this was an abuse of discretion.

---

[10] 141 Wn. App. 235, 248-49, 170 P.3d 572 (2007).

Separate Property

Dr. Wright contends that the trial court improperly invaded his separate property in awarding the $1.7 million equalizing payment because the award necessarily included his future earnings. To support this contention, he cites to Marriage of Holm, a case decided under Remington's Revised Statutes § 989.[11] This court rejected the nearly identical argument in a recent published opinion, In re Marriage of Larson and Calhoun,[12] relying in part on our Supreme Court having rejected the Holm approach in Konzen v. Konzen.[13] The Konzen court made clear that "[t]he character of the property is a relevant factor which must be considered, but is not controlling."[14] As the Larson court correctly observed, Konzen controls as to this issue.[15] As in Larson, the trial court's decision here was within the range of acceptable choices, given the facts and the applicable legal standard.

Dr. Wright also asserts that the trial court erred in distributing separate property consisting of the practice's accounts receivable for services provided after Ms. Wright filed for dissolution. However, Dr. Wright failed to claim these assets as his separate property at trial, even when the trial court directly asked Dr. Wright's counsel to list his separate property. The trial court's duty to characterize a particular asset as community

---

[11] 27 Wn.2d 456, 465, 178 P.2d 725 (1947).

[12] No. 69833-8-I (Wash. Ct. App. Nov. 25, 2013).

[13] 103 Wn.2d 470, 693 P.2d 97 (1985).

[14] Id. at 478.

[15] Larson, No. 69833-8-I, slip op. at 10.

or separate property only arises where the issue is presented at trial.[16] Dr. Wright waived the issue as to these assets.[17]

### Distribution of Alaska Surgical Practice

Dr. Wright argues that the trial court erred in distributing the goodwill of his Alaska surgical practice. He contends that the practice had no value because it was not "saleable" under Alaska law. Under Alaska law, goodwill that cannot be marketed or sold is not considered in the property distribution at the dissolution of a marriage.[18]

Where there is a conflict of laws, the court determines which state's law to apply by evaluating which jurisdiction has the "most significant relationship" to a given issue.[19] This is determined under the principles stated in *Restatement (Second) Conflicts of Law* § 6 (1971),[20] which include:

---

[16] RCW 26.09.080; 20 KENNETH W. WEBER, WASHINGTON PRACTICE, FAMILY AND COMMUNITY PROPERTY LAW, § 32.9, at 175 (1997).

[17] See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."); see also In re Marriage of Griswold, 112 Wn. App. 333, 349 n.7, 48 P.3d 1018 (2002).

[18] Moffitt v. Moffitt, 749 P.2d 343, 347 (Alaska 1988) ("If the trial court determines either that no good will exists or that the good will is unmarketable, then no value for good will should be considered in dividing the marital assets."); see also Miles v. Miles, 816 P.2d 129, 131 (Alaska 1991); Fortson v. Fortson, 131 P.3d 451, 460 (Alaska 2006) (wife's dermatology "clinic's unmarketability made it unnecessary to determine the value of the clinic's goodwill").

[19] Seizer v. Sessions, 132 Wn.2d 642, 650, 940 P.2d 261 (1997).

[20] In Seizer, our Supreme Court adopted *Restatement (Second) Conflicts of Law* § 258 (1971), which explains that the most significant relationship is determined under the principles stated in § 6. Section 258 further clarifies the relative weight given to these factors: "In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state where the spouses were domiciled at the time the [property] was acquired than to any other contact in determining the state of the applicable law." Comment a to § 258 states that "[t]he rule applies to chattels, to rights embodied in a document and to rights that are not embodied in a document." In In re Marriage of Landry, 103 Wn.2d 807, 810, 699 P.2d 214 (1985), this rule was applied to a spouse's military pension. Dr. Wright does not dispute the applicability of

(a)   the needs of the interstate and international systems,

(b)   the relevant policies of the forum,

(c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d)   the protection of justified expectations,

(e)   the basic policies underlying the particular field of law,

(f)   certainty, predictability and uniformity of result, and

(g)   ease in the determination and application of the law to be applied.

Here, the trial court considered those factors and determined that Washington law should apply. The trial court explained that "Washington's policy interests in consistency and in protecting the financial expectations of these parties are substantial and outweigh the speculative interest of Alaska in not restricting [Dr. Wright's] economic liberty . . . in these unusual circumstances."[21] The trial court's findings of fact concerning the long-term nature of the marriage and the parties' financial expectations strongly support the conclusion that Washington's contacts were more significant than Alaska's.

Dr. Wright fails to persuasively demonstrate that the trial court abused its discretion in considering the surgery practice's goodwill as an asset in calculating Dr. Wright's award. The trial court's determination of the goodwill value was supported at trial by the testimony of financial experts. Ms. Wright's expert, certified public accountant Kevin Grambush, testified that Dr. Wright's neurosurgery practice was worth $8.4 million and, of that, "[t]he tangible assets are $1,105,042, and the goodwill value is

---

*Restatement (Second) Conflicts of Law* § 258 to the goodwill of his Alaska business, but challenges the trial court's analysis of those factors.

[21] Clerk's Papers at 253.

7

$7,294,958."[22] Dr. Wright's expert, certified public accountant Neil Beaton, testified that the goodwill value was $366,000. The trial court ultimately accepted Beaton's goodwill value of $366,000, and awarded Ms. Wright a $219,600 share. Because this award was based directly on evidence provided by Dr. Wright's own expert, there was no abuse of discretion in the trial court's determination that this number was correct.

Dr. Wright argues that Ms. Wright had no financial expectation that the goodwill would be treated as an asset because she should have assumed that Alaska law would apply. But it was entirely reasonable for the trial court to conclude that Ms. Wright had a legitimate expectation to receive her community property share of the goodwill based on a correct application of Washington law and on the trial court's factual findings supported by the evidence.

Dr. Wright also contends the trial court erred by concluding that the marriage was irretrievably broken in April 2011, when Ms. Wright filed for divorce. He argues that his business investments, comprised of money he earned before that date but while the couple were living separate and apart, are his separate property. Neither argument is persuasive.

The trial court's finding that the marital community was intact until April 2011 is supported by sufficient evidence. The record demonstrates that (1) Dr. Wright moved to Alaska in November 2007, when the parties' youngest children were still in middle school or high school, and it "really was never the plan" for the family to move with him;[23] (2) Dr. Wright regularly travelled between the family home and Alaska, and the

---

[22] Report of Proceedings (RP) (May 29, 2012) at 71. Grambush also addressed and criticized the approach undertaken by Dr. Wright's expert's valuation of the practice.

[23] RP (May 31, 2012) at 590.

parties travelled together regularly and continued to socialize with friends together; (3) even after Dr. Wright announced in October 2010 that he had a pregnant girlfriend in Alaska, neither party expressly renounced the marriage; (4) in January 2011, the parties discussed the family's future as a family partnership, not a divorce; and (5) Ms. Wright, a Roman Catholic, was not eager to divorce,and filed for divorce only after concluding the marriage was irretrievably broken in April 2011.

In Washington, when married individuals live separate and apart from one another, their respective earnings and accumulations while apart are regarded as "the separate property of each."[24] However, the separate and apart statute provides that a married person's assets are separate property only when a "community" no longer exists. Mere physical separation does not dissolve the community.[25] The determination of whether a husband and wife are living separate and apart "turns on the peculiar facts of each case."[26] The evidence supports the trial court's finding that the marital community was intact until April 2011. This finding, in turn, supports the trial court's determination that Ms. Wright was entitled to her community property share of these assets. Accordingly, Dr. Wright fails to demonstrate that the trial court erred in dividing these assets as community property.[27]

Dr. Wright also argues that the trial court erred in making him solely responsible for liability from a pending medical malpractice action, citing Dizard & Getty v.

_____

[24] RCW 26.16.140.

[25] Kerr v. Cochran, 65 Wn.2d 211, 224, 396 P.2d 642 (1964).

[26] Nuss v. Nuss, 65 Wn. App. 334, 344, 828 P.2d 627 (1992).

[27] See Seizer, 132 Wn.2d at 654 ("If the [separate and apart] statute does not apply because the marriage is not defunct, [the wife] would then be entitled to her community property share of the [asset].").

9

Damson.[28] But Dr. Wright does not identify any portion of the record that demonstrates any existing or pending liability from such a suit. The trial court was not required to make provision for a hypothetical future lawsuit in its property award. Because the trial court's findings regarding the values of assets and liabilities were amply supported by evidence at trial, Dr. Wright fails to demonstrate any abuse of discretion in its assessment of this purely hypothetical liability.

The trial court's distribution of these assets was reasonable, supported both by correct conclusions of applicable law and findings of fact supported by the evidentiary record.

## Maintenance

Dr. Wright contends that the trial court abused its discretion by awarding maintenance because Ms. Wright did not demonstrate financial need in light of the other provisions included in her award. Because financial need is not a prerequisite to a maintenance award, Dr. Wright's argument is unpersuasive.

The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be "just."[29] Maintenance is "a flexible tool" for equalizing the parties' standard of living for an "appropriate period of time."[30]

---

[28] 63 Wn.2d 526, 387 P.2d 964 (1964). In Dizard, the husband was responsible for the community business while the dissolution was pending. The community accumulated debts for which creditors sought payment after the marriage was dissolved. The wife sought to avoid liability, claiming that the marriage was defunct when the liabilities accrued. The Supreme Court held that "it is inconceivable that respondent may authorize the husband to carry on the community business, create a potential source of assets, ultimately share in these assets, and yet be immune from the claims of creditors who contribute to the accumulations, if any." Dizard, 63 Wn.2d at 530.

[29] In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

[30] In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

Citing In re Marriage of Rink,[31] Dr. Wright argues that in high-asset cases, neither spouse has financial "need" and thus, an award of both maintenance and a disproportionate property division is not appropriate. Dr. Wright's reliance on Rink is misplaced because Rink is distinguishable from the facts here. In Rink, both parties had several working years ahead of them after their 24-year marriage ended. Here, by contrast, the trial court determined Ms. Wright would not work and Dr. Wright would retire in 2.5 years at the soonest. Rink does not support Dr. Wright's argument that Ms. Wright is required to work before an award of maintenance is appropriate. Rink supports the conclusion that the trial court has discretion to award both an unequal property division and maintenance in favor of the same spouse. The Rink court affirmed an award to the wife of two-thirds of the marital estate and maintenance.[32]

Dr. Wright argues that in ordering maintenance, the trial court gave too much weight to the fact that Ms. Wright supported him for a time while he earned his degree. His argument, premised upon the analysis in Washburn, is not persuasive. The Washburn court held that when a marriage endures for some time after one spouse obtains a professional degree while supported by the other spouse, an award of maintenance may be inappropriate because "the supporting spouse may already have benefited financially from the student spouse's increased earning capacity."[33] Dr. Wright fails to demonstrate that the Washburn analysis applies here, given that the ultimate property division will leave him ahead by nearly $2.7 million, even considering the maintenance award. He also fails to provide any details allowing any insight into

---

[31] 18 Wn. App. 549, 571 P.2d 210 (1977).

[32] Id. at 551.

[33] Washburn, 101 Wn.2d at 181.

how the trial court analyzed the extent of Ms. Wright's support while Dr. Wright earned his degree.

Dr. Wright does not demonstrate that the maintenance award was an abuse of the trial court's discretion.

## Attorney Fees

Dr. Wright seeks attorney fees and costs under RCW 26.09.140. This court may award attorney fees after considering the relative resources of the parties and the merits of the appeal.[34] Here, Dr. Wright was awarded substantial property in the dissolution, and is able to carry his own attorney fees on appeal. We deny his motion.

Affirmed.

WE CONCUR:

---

[34] RCW 26.09.140; Leslie v. Verhey, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).