# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In re the Matter of the Marriage of | No.  46706-2-II |
| ELIZABETH A. ROBBINS, | |
| Respondent, | |
| and | |
| SAMUEL F. VALDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J.  —  Samuel Valdez appeals from the trial court's decree dissolving his marriage to Elizabeth Robbins.  First, Valdez argues that the trial court abused its discretion when it awarded Robbins one of the parties' real properties based on the property's tax assessed value.  Valdez failed to preserve this argument for review and he invited any alleged error.  And even if the merits of his argument are reached, the trial court's property valuation was not an abuse of discretion.  Second, Valdez argues that the trial court failed to make a fair and equitable division of the marital property.  But the trial court properly acted within its broad discretion.  Accordingly, the trial court's orders are affirmed.

FACTS

I. BACKGROUND

Robbins and Valdez entered their marriage with significant separate property. During the marriage, they accumulated substantial community property and contributed their labor and funds to each other's separate property. Specifically, the parties acquired a five-acre land parcel at 1554 Altoona Pillar Rock Road, Rosburg (1554 property). In 2010, the parties entered an agreement (the Bruneau Agreement) with Tom and Maryanne Bruneau to eventually sell the 1554 property for $250,000. In October 2012, the parties separated following a 10-year marriage. After the parties' separation, Valdez negotiated a tax assessed value of $130,000 for the 1554 property.

II. TRIAL

In June 2014, the parties appeared for a three-day dissolution of marriage trial. Regarding the 1554 property, Robbins testified that the Bruneaus intended to forfeit the property under the agreement because they could not afford to buy it for $250,000. If Robbins was awarded the property she would sell it to the Bruneaus for the $130,000 tax assessed value. Robbins entered the 2013-2014 tax assessment into evidence with no objection from Valdez.[1]

In contrast, Valdez testified that the 1554 property was worth $250,000. He could not remember the Bruneau Agreement's terms nor did he enter the agreement into evidence.[2] Valdez

---

[1] The parties agreed "to the admissibility of" documents detailing the tax assessed values of the parties' real property holdings. 2 Report of Proceedings at 288.

[2] Although the Bruneau Agreement was never admitted at trial, both parties cited to it in their briefs. The Agreement appears in the Clerk's Papers because it was submitted on a pretrial motion within the sealed financial records. Without its admission at trial there is no indication the trial court considered it.

also referred to the Bruneau Agreement alternatingly as a "contract" and an "earnest money agreement" and stated he collected $1,000 per month from the Bruneaus which his counsel referred to as "rent." 3 Report of Proceedings (RP) at 394-95. Valdez acknowledged the Bruneaus' possible forfeiture of the agreement. Throughout trial, Valdez's arguments directed the court to consider the value of the "property." Finally, in his closing, Valdez asserted that "all the parties agree [the 1554 property is not] worth what the contract indicated the value was" and he asked to be awarded the property. 3 RP at 512.

### III. Findings of Fact and Dissolution Decree

Although Valdez asserted that the parties entered the marriage with close to equal contributions, the trial court found this was not supported by the evidence. The trial court determined that overall, Robbins's testimony was more credible than Valdez's and largely adopted Robbins's tracing to characterize the ownership of the properties. Regarding the 1554 property, the court found, "The land was sold to Hall/Brunneau [sic] for $250,000.00. Valdez obtained a revaluation to $130,000.00 as to the land and argued for the $130,000.00 value to be adopted by the court. The court awards this property value to Robbins." Clerk's Papers (CP) at 110.

The dissolution decree awarded each party their separate property, valued their community property at $640,981, and ordered an equal division. Valdez received property valued at $432,136 and Robbins received property valued at $208,847. The trial court ordered Valdez to pay Robbins an equalizing award of $111,645. The trial court also compensated the community for work performed on the parties' separate properties and rejected Valdez's request for an additional award based on equity.

The parties' marriage was dissolved in September 2014. Valdez appeals.

ANALYSIS

I. THE 1554 PROPERTY

Valdez argues that the trial court abused its discretion by awarding to Robbins the 1554 property at its taxed assessed value rather than awarding her the Bruneau Agreement as personal property valued at $245,000—the amount Valdez stated was left owing on the agreement at the time of trial. Valdez waived this claim and invited any alleged error with respect to it, precluding review. But even if the merits are reached, substantial evidence supports the trial court's valuation of the real property at $130,000.

A. VALDEZ WAIVED HIS CLAIM

Robbins argues that Valdez failed to argue at trial that the community asset was the Bruneau Agreement and not the real property itself and, thus, this claim cannot be considered on appeal pursuant to RAP 2.5(a). Robbins is correct.

Under to RAP 2.5(a), we do not review any issue, theory, argument, or claim of error not presented at the trial court level. *Lindblad v. Boeing Co.*, 108 Wn. App. 198, 207, 31 P.3d 1 (2001). We avoid such review in order to encourage trial court correction of alleged errors and to avoid unnecessary appeals. *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 527, 20 P.3d 447 (2001).

As Robbins correctly asserts, Valdez never claimed at trial that the parties' only community interest in the 1554 property was the Bruneau Agreement, not in the land itself. Indeed, he never presented a copy of the Bruneau Agreement to the trial court and stated he was not certain of its terms. Valdez's arguments focused on the value of the "property" asset, not an alleged community asset of a purchase and sale agreement Valdez advocates for now. And during closing, Valdez

4

argued he should be awarded the real property, not the agreement. Because Valdez raised this claim for the first time on appeal, he has waived it.

### B. VALDEZ INVITED ERROR

Robbins also claims that because Valdez argued for an award of the real property throughout trial, Valdez invited error with respect to his claim that the trial court abused its discretion in awarding the 1554 property at a value of $130,000. Again, Robbins is correct.

The doctrine of invited error precludes review when the appellant induces the trial court to take the action to which error is assigned on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995).

Valdez induced the trial court to consider awarding the real property when, throughout trial, his arguments directed the court to consider the value of the "property" and not a personal property interest in the Bruneau Agreement. Additionally, at closing, Valdez asked to be awarded the property itself, not the agreement as personal property, and he conceded that "all the parties agree [the 1554 property is] not worth what the contract indicated the value was." 3 RP at 511-12.

Valdez undermined the ongoing validity of the Bruneau Agreement, thus inducing the trial court to disregard it and its valuation in favor of the recent, valid tax assessment. He did so by acknowledging the Bruneaus may forfeit the contract when he stated, "No matter what happens on this contract, I have no intentions of seeing them leave. I'm quite confident we will work something out." 3 RP at 396. This sentiment about the tenuous nature of the contract and his commitment to "work something out" was clearly counter to a request to award the agreement at its reported face value.

5

Valdez invited the trial court to award the real property and assign value to the property at less than $250,000. Valdez's claim that the trial court erred by awarding the real property, valued at $130,000, is invited error and he is not entitled to review.

### C. SUBSTANTIAL EVIDENCE SUPPORTS THE 1554 PROPERTY VALUATION

Valdez argues that the value of the Bruneau Agreement was the $245,000 in principal owed under the agreement and that the tax-assessed value had no relevance. Even if Valdez's claim that the trial court abused its discretion when it awarded the 1554 property at a value of $130,000 is considered on the merits, the claim still fails.

Trial courts have broad discretion in distributing property and liabilities in marriage dissolution proceedings. *See* RCW 26.09.080. RCW 26.09.080 requires that property divisions be just and equitable following a consideration of relevant statutory factors including nature and extent of community and separate property, the duration of the marriage, and the economic circumstances of each spouse at the time of the division.

We review the trial court's dissolution orders, including property division, for abuse of discretion. *In re Marriage of Buchanan*, 150 Wn. App. 730, 735, 207 P.3d 478 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Fiorito*, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002).

A trial court may assign values to property so long as the value is within the range of evidence presented. *See In re Marriage of Soriano*, 31 Wn. App. 432, 435, 643 P.2d 450 (1982). A trial court may have substantial evidence for properly placing a value on a property where the trial court considers greater and/or lesser values placed on the property by different witnesses. *In re Marriage of Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993). Evidence is substantial if

6

it exists in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

An owner may testify as to his property's value and the weight to be given to that testimony is left to the trier of fact. *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968). It does not matter if other evidence contradicts the value decided by the trial court since credibility determinations are left to the trier of fact and are not subject to review. *Burrill*, 113 Wn. App. at 868. The record is reviewed in the light most favorable to the party in whose favor the findings were entered when determining whether substantial evidence supports the trial court's finding of fact on the value of an asset. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). Unchallenged findings of fact are verities on appeal. *Humphrey Indus., Ltd. v. Clay St. Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

Because the emotional and financial interests affected by appeals of marriage dissolution decrees are best served by finality, trial court decisions in such proceedings are rarely changed on appeal. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985); *Buchanan*, 150 Wn. App. at 735. Thus, we affirm a trial court's decision unless no reasonable judge would have reached the same conclusion. *Landry*, 103 Wn.2d at 809-10.

To support his claim, Valdez relies solely on *Freeborn v. Seattle Trust & Savings Bank*, 94 Wn.2d 336, 340, 617 P.2d 424 (1980). In *Freeborn*, the court held that a vendor's interest in a real estate contract is personal property: "Washington case law supports the conclusion that the right to receive contract payments under a contract for the sale of real property is personal property." 94 Wn.2d at 340. However, this case is distinguishable from *Freeborn*. 94 Wn.2d at 340. Here, as stated above, no contract was entered into evidence and Valdez called the

arrangement with the Bruneaus an "earnest money agreement" with "rent" payments, rather than contract payments under a sale of real property as in *Freeborn*. 3 RP at 394-95. Thus, Valdez failed to establish that he had the right to receive payments under a contract for the sale of the property.

The evidence presented at trial supports the court's award of the real property and valuation at $130,000. First, the 2013-2014 tax assessment of the 1554 property valued the property at $130,000. Second, the Bruneau Agreement was never entered into evidence so its precise terms were not before the trial court. Third, the trial court considered both parties' testimony with respect to their wishes to be awarded the property, the property's value, and specifically Robbins's belief that the Bruneaus would forfeit the existing agreement leading her to rewrite it for $130,000, and the trial court found Robbins more credible.

Finally, in regards to the 1554 property, the court found that "[t]he land was sold to Hall/Brunneau [sic] for $250,000. Valdez obtained a revaluation to $130,000.00 as to the land and argued for the $130,000.00 value to be adopted by the court. The court awards this property value to Robbins." CP at 110. Valdez does not challenge this finding on appeal and, thus, it is a verity. *Humphrey Indus.*, 176 Wn.2d at 675.

The trial court considered the values advocated by the parties and then properly used its discretion to assign the 1554 property's value at $130,000. *Sedlock*, 69 Wn. App. at 491. Any reasonable trial court could have decided to award the real property at a value based on the tax assessment. *Landry*, 103 Wn.2d at 809-10. The trial court's award of the real property and its valuation was supported by substantial evidence, was not an abuse of discretion, and is affirmed.

## II. THE EQUALIZING AWARD

Valdez contends the equalizing award was inequitable and decided in error. He supports his contentions with three arguments, each of which are addressed in turn. His contentions fail because the trial court properly exercised its discretion.

### A. THE TRIAL COURT CONSIDERED THE MARITAL ASSETS AS A WHOLE

First, Valdez argues that the memoranda of decision and the final decree do not show that the trial court considered the marital assets as a whole when it awarded the equalizing judgment. This argument is unpersuasive.

In the decree, the trial court included an asset chart that documents all of the parties' real and personal property, community and separate, including reimbursements to Robbins. The decree's asset chart includes the trial court's determined values for each community asset and the trial court's notes from trial. The chart documents how the trial court determined the total value of the community assets and the amount of the equalizing award. In its five-page memoranda of decision, the trial court demonstrates that it made a reasonable property distribution after considering all of the parties' assets. The trial court found Robbins's testimony more credible and used her spreadsheet as a "go-by." CP at 106. The trial court also explains what of the party's claims and assessed values it adopted and why, regarding the many properties at issue.[3]

The court's decision was not based on manifestly unreasonable or untenable grounds, but was a proper evaluation of the facts before it under RCW 26.09.080. *Fiorito*, 112 Wn. App. at

---

[3] Among the assets and claims discussed in the memoranda of decision are the parties' property at 1198 Altoona Pillar Rock Road; Valdez's equity relief claim, claim for maintenance, and claim that Robbins induced him to prematurely draw from his worker's employment and retirement plan; estimates of work contributed by the parties to Robbins's cabin; and the parties' stock and loans, among others.

663-64.  The decree and memoranda of decision lay out the whole of the parties' properties and assets and supports the conclusion that the trial court considered all of the parties' assets when it made the property division and awarded the equalizing payment to Robbins.

### B.  THE TRIAL COURT ACTED WITHIN ITS BROAD DISCRETION

Second, Valdez argues that the trial court abused its discretion when it distributed property based on each spouse's connections to the property and ignored his counsel's suggested property division.  This argument fails.

The trial court's "broad discretion" to determine what is equitable and just in a dissolution requires the court to consider not only the nature and extent of the community property, but also all relevant factors.  *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 137-38, 313 P.3d 1228 (2013), *review denied*, 180 Wn.2d 1011 (2014).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.  *Fiorito*, 112 Wn. App. at 663-64.

We decline to reach Valdez's contentions because he fails to support them with authority or argument.  RAP 10.3; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding an assignment of error will be waived where there is no supporting authority or argument).  Valdez cites to no authority that a trial court abuses its broad discretion when it awards property after considering each party's connection to the property and when it declines to follow one party's suggested division of property.  Further, Valdez makes no argument why such considerations would amount to an abuse of discretion.  His contentions are waived under RAP 10.3 and *Cowiche Caynon*.  118 Wn.2d at 809.

However, even if not waived, the trial court properly exercised its broad discretion to consider the parties' connections to the assets and to reject Valdez's suggested division of the property and instead to award the property based on the evidence before it.

C. THE EQUALIZING AWARD DID NOT RESULT IN A PATENT ECONOMIC DISPARITY

Valdez argues that the equalizing award of $111,645 is "crushing" and claims that a manifest abuse of discretion has occurred where a decree results in a patent disparity between the parties' economic circumstances. Br. of Appellant at 12. Again, this argument fails.

To support his contention that the equalizing payment was crushing, Valdez points *solely* to the fact that the equalizing judgment is over 17 percent of the total value of the community property. But he cites no authority to support his contention and makes no argument why this award results in a patent disparity between the parties' economic circumstances.

Robbins responds by citing to several authorities which affirmed the award of an equalizing judgment, including *In re Marriage of Wright*, 179 Wn. App. 257, 319 P.3d 45 (2013), *review denied*, 180 Wn.2d 1019 (2014). In *Wright*, a trial court's division of property awarding more tangible and liquid assets to one party where the property division accommodated the other party's request for specific high-value items was not an abuse of discretion. 179 Wn. App. at 263. Division One of this court found there was no abuse of discretion where the wife was awarded $3,369,196 more than her husband given that with his projected earnings after the dissolution, he would ultimately end up with $2.7 million more than the wife, and given the trial court's grant of his requests during dissolution. *Wright*, 179 Wn. App. at 262-63.

Here, the equalizing judgment of $111,645 created only a $1.00 imbalance between the parties as opposed to $3,369,196 in *Wright*. 179 Wn. App. at 262-63. The trial court here awarded

the husband many of the high-value assets he requested including a community property in Cathlamet, Washington that Mr. Valdez extensively excavated, his boat, and his airplane, and also found he is a "very skilled individual who has the ability to find work in his field of construction or real estate investments." CP at 107. Although the practical effect of the equalizing award may be that Valdez must sell some of his real property or other assets, or work to pay the award, he has not met his heavy burden to show the trial court's decision represents a manifest abuse of discretion.

The trial court considered the overall distribution and found that "[t]he distribution of property and liabilities as set forth in the decree is fair and equitable." CP at 123. Valdez does not challenge this finding on appeal and, thus, it is a verity. *Humphrey Indus.*, 176 Wn.2d at 675.

In conclusion, Valdez's arguments are all belied by the record and unsupported by the law. The trial court properly reviewed the overall distribution of community property within its broad discretion, and the trial court's award was not based on untenable grounds and did not result in patent economic disparity between the parties.

### III. ATTORNEY FEES

Robbins requests attorney fees because Valdez's appeal is frivolous under RAP 18.9(a), RAP 18.1, and *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114 (1983). Valdez argues attorney fees should not be awarded to Robbins because they were not awarded below and there has been no showing of need or of his ability to pay. We agree with Robbins.

RAP 18.1(a) states a party must request fees in the manner provided by the rule that grants the party the right to recover attorney fees. Under RAP 18.9(a), on motion of a party, we may order a party who files a frivolous appeal to pay terms or compensatory damages to the other

party if harmed by the appeal. In *Healy*, a father appealed his child support payment to reduce it by one-half without any factual or legal support for the reduction such that the court found the issues presented were "so devoid of merit that there is no reasonable possibility of reversal," making the appeal frivolous. 35 Wn. App. at 406.

As in *Healy*, Valdez's arguments regarding the 1554 property and the equalizing award lacked factual or legal support, and his appeal regarding these issues was frivolous. Valdez failed to preserve his arguments related to the 1554 property and invited any alleged error. Valdez also did not provide support for his contention that the trial court abused its broad discretion by awarding an equalizing judgment to Robbins.

Finally, Robbins was harmed by the frivolous appeal under RAP 18.9(a), given that she had to pay to respond to the appeal. We reject Valdez's contentions that because attorney fees were not awarded below and because Robbins did not make a showing of need or his ability to pay, fees should not be awarded now because he fails to support those contentions with any authority or argument. RAP 10.3; *Cowiche Canyon*, 118 Wn.2d at 809. Valdez cites to no authority that an appeals court may not award attorney fees if the trial court did not do so. Finally, RAP 18.9(a) does not require that Robbins make a showing of need or of Valdez's ability to pay; she need only show that he brought a frivolous appeal. Because Robbins incurred fees in responding to this frivolous appeal, Robbins is entitled to attorney fees under RAP 18.9(a), RAP 18.1, and *Healy*, 35 Wn. App at 405-06.

No. 46706-2-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MAXA, J.