IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In re the Marriage of | ) |
| | ) No. 34145-3-III |
| RYAN GLOVER, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) UNPUBLISHED OPINION |
| | ) |
| CONNIE GLOVER, | ) |
| | ) |
| Respondent. | ) |

SIDDOWAY, J. — Ryan Glover appeals the maintenance award, property division, and payment terms ordered in the decree dissolving his almost 24-year marriage to Connie Glover. Finding no abuse of discretion, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Ryan Glover filed for divorce from Connie Glover in November 2014, after nearly 24 years of marriage. Mr. Glover has a Bachelor's of Pharmacy degree and after

graduation, he went to work as a pharmacist for Yakima Valley Memorial Hospital. After she graduated, Ms. Glover went to work as a high school math teacher in the Selah School District. The parties' two children were both adults at the time of the divorce; their son was still in college.

At the bench trial, Ms. Glover asked the trial court for an equal division of the community property and requested an award of maintenance in order to equalize the disparity in her and Mr. Glover's incomes—at least until their son graduated from college.

Mr. Glover asked that the trial court award him a disproportionate amount of the couple's community property because he feared, based on deficits resulting from a stroke several years earlier, that he was at risk of losing his job and having difficulty finding equivalent employment.

At the time of trial, Mr. Glover's total gross monthly income was approximately $10,765 ($8,265 earned; $2,500 in disability payments); Ms. Glover's was $5,645. Mr. Glover reported net income of approximately $5,600; Ms. Glover reported net income of approximately $4,069.

Following a one-day trial, the court took the matter under advisement and within a week issued a letter decision. Because a principal basis for Mr. Glover's appeal is the

court's alleged failure to take into account his disability, we quote at length from the

court's discussion on that score:

On December 5, 2010, the husband had a stroke. He was treated locally, and then transferred to Virginia Mason Hospital in Seattle. After a four day hospitalization, he was transferred back to Yakima and went through a rehabilitation program, of several weeks duration, at Yakima Regional Medical Center. He went back to work in May 2011, where he served as the supervising pharmacist at North Star Lodge, a cancer care clinic which is part of the hospital.

. . . .

The husband asks for a[n] unequal division of assets. He bases his request upon his belief that he will soon be terminated from his employment, that he will be unable to obtain other employment in his field and that his medical condition has substantially compromised his potential life span.

The difficulty with his argument is there is no evidence, beyond his testimony, that any of these beliefs have any validity. Although he is working a reduced number of hours at North Star, he is doing so at his own request. And the reduction in hours resulted in loss of his supervisory position; a consequence he accepted as part and parcel of the hours reduction. Although some of his communication skills, primarily speech, have been compromised by the stroke, he was able to testify and be understood during several hours on the witness stand. Additionally, he testified that he has been directed not [to] interact with the public or medical professionals, but he does so when the necessity arises.

Regarding the issue [of] employability, it is difficult to assess Mr. Glover's opinions on this subject given the fact that he has not been in the job market since 1993. I find it incredible that a pharmacist of his education and experience, even lacking a doctorate, would be a pariah as a job seeker.

Finally, there is no evidence from any uninterested medical professional which would suggest that Mr. Glover will not live an otherwise normal life span. The stroke was caused by a defect in his heart, which has since been corrected. His condition is stable.

Although I think Mr. Glover is sincere in his beliefs, I also believe they are without basis in fact. A near equal division of the assets and

3

liabilities of the community is appropriate. I am rejecting Mr. Glover's request for a lopsided division.

Clerk's Papers (CP) at 10-12.

The court's letter decision ruled that each party's community property interest in the other's pension would be handled by a QDRO;[1] observed that the parties had already divided their checking accounts, and divided the remaining community assets and liabilities as follows:

|  | Awarded to Mr. Glover | Awarded to Ms. Glover |
|---|---|---|
| Residence | $270,000.00 | |
| Retirement accts | $92,930.00 | $92,930.00 |
| " | | $21,701.00 |
| " | | $28,037.00 |
| " | $34,442.00 | |
| " | | $16,388.00 |
| " | $20,977.00 | |
| " | | $20,791.00 |
| Vehicles | $10,301.00 | |
| " | | $9,373.00 |
| " | $2,000.00 | |
| " | | $2,000.00 |
| **Total Assets** | $430,650.00 | $191,220.00 |
| | | |
| Home mortgage | ($115,543.00) | |
| Car loans | ($4,848.00) | |
| " | | ($5,222.00) |
| **Total Liabilities** | ($120,391.00) | ($5,222.00) |
| | | |
| **Asset allocation net of liabilities** | $310,259.00 | $185,998.00 |

---

[1] Qualified domestic relations order.

4

The court's letter decision recognized that Ms. Glover had received a $120,000 inheritance after the dissolution action was filed, ruled that it retained its separate character, and awarded it to her. It observed that the community had received the benefit of a $95,000 inheritance Ms. Glover received in September 2011 (three years before the dissolution action was filed) that had been deposited to a joint account and treated as a community asset.

The court ordered Mr. Glover to pay $1,600 in monthly maintenance for five years from the decree or the date the parties' son graduated from college, whichever occurred first. It based its award of maintenance on "[t]he duration of the marriage and the disparity between the incomes of the parties, which would otherwise result in inequality in their post dissolution standard of living." CP at 12.

Noting the approximately $124,000 disparity in the distributed assets, the court ruled that Mr. Glover could fund an equalization payment to Ms. Glover "through either a sale or refinance of the house," and indicated it would enter a judgment that would not bear interest until March 1, 2016. CP at 12-13. Ms. Glover's lawyer was directed to prepare the findings, conclusions, and decree.

As presented, the decree modified aspects of the property division, presumably with the agreement of the parties. It also reflects some handwritten modifications by the

5

court that are not at issue on appeal. The equalization payment ordered based on the

revised asset listing and adjustments was $53,630, and judgment was entered in that

amount.

Mr. Glover moved for reconsideration, which was denied. He appeals.

ANALYSIS

Mr. Glover assigns error to (1) the trial court's award of maintenance, (2) the

property division, and (3) the court's entry of judgment in the amount of the equalization

obligation rather than satisfying the obligation through a transfer of retirement assets.

We address the assigned errors in turn.

*The trial court did not abuse its discretion in awarding maintenance*

Mr. Glover argues that in awarding maintenance to Ms. Glover, the trial court

failed to take into consideration the extent of her separate property, failed to treat his

disability payments as his separate property, and failed to consider the uncontroverted

evidence of his disability and health limitations.

It is within the trial court's discretion in a dissolution action to order maintenance

"in such amounts and for such periods of time as the court deems just, without regard to

misconduct." RCW 26.09.090(1); *In re Marriage of Bulicek*, 59 Wn. App. 630, 633, 800

P.2d 394 (1990). In arriving at a maintenance order, the court is required to consider all

6

relevant factors, including six identified by RCW 26.09.090(1). The trial court is not required to make specific factual findings on all of the factors so long as the court considers them. *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

We review a trial court's award of maintenance for abuse of discretion. *In re Marriage of Matthews*, 70 Wn. App. 116, 853 P.2d 462 (1993). We will affirm unless no reasonable trial court would have reached the same decision. *Tatham v. Rogers*, 170 Wn. App. 76, 106, 283 P.3d 583 (2012).

The trial court's ruling highlighted three of the statutory factors in explaining its maintenance award; Mr. Glover argues that this means the court failed to consider the others. The court wrote that by statute, it was to consider:

> all relevant factors including but not limited to: .....
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership; .... and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

CP at 12. In construing this explanation, we are confident that the court knows what it means to use ellipses and was aware it was leaving out factors (a), (b), and (e). It is manifest from the language above that the court had to have consciously considered those factors before it could consciously omit them from factors it deemed important.

Mr. Glover objects because the trial court did not attach more importance to factors RCW 26.09.090(1)(a) and (e). A reasonable trial court could discount those

7

factors in this case. Factor (a) is "[t]he financial resources of the party seeking maintenance, including separate or community property apportioned to him or her." The trial court was fully cognizant of Ms. Glover's separate property. Particularly because the community benefitted from $95,000 of her separate property only a few years before the dissolution action was filed, it is understandable that the $120,000 she inherited thereafter was not deemed as important as other maintenance factors.

Factor (e) is "[t]he age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance." Mr. Glover objects because the trial court did not attach more importance to "the permanent disability and health care limitations [Mr. Glover] faces." Br. of Appellant at 12.

Mr. Glover's evidence of his disability at trial consisted of an August 2012 report by a neuropsychologist in support of his request for accommodations at work; the record of a more recent consultation at Virginia Mason Hospital at which an additional medication was prescribed; the testimony of a coworker as to changes in his abilities, energy, and job responsibilities following his return to work; and Mr. Glover's own testimony. Mr. Glover's testimony was the direst characterization of his deficits and prognosis. But as Ms. Glover's lawyer argued at the close of trial, "Mr. Glover . . . has absolutely no medical information that says his life span is shortened, you know, his ability to work beyond where he's working now is somehow compromised or shortened."

Report of Proceedings (RP) at 209. He also pointed out that during the one-day trial, Mr. Glover "did great. He did well. He was eloquent. He was articulate. He didn't get lost. He didn't lose his train of thought and track. Voice was a little gravelly. Physically, he was fine. Emotionally, he was fine." RP at 215.

As the trial court's letter decision explains, it found that Mr. Glover's bleak characterization of his future had no basis in fact. The court had the opportunity to observe Mr. Glover at trial, and could assess Ms. Glover's lawyer's characterization that Mr. Glover looked fine physically and emotionally. Substantial evidence supports the court's finding that Mr. Glover had addressed the limitations caused by his stroke by reducing his hours and responsibilities. Even with Mr. Glover's reduced income, a significant disparity remains in what he and Ms. Glover earn.

Mr. Glover argues that the trial court failed to consider that income he will receive postdissolution as disability payments is separate property—but *all* of Mr. Glover's postdissolution income is separate property, as is all of Ms. Glover's postdissolution income. Mr. Glover appears to be confusing whether disability insurance proceeds, if paid for with community property, are divisible *community property*—in *In re Marriage of Brewer*, 137 Wn.2d 756, 768, 976 P.2d 102 (1999), the court held they were not. When dealing with maintenance rather than property division, the relevance of disability payments is their bearing on Mr. Glover's future financial position. The trial court's stated objective in this long-term marriage was to place the parties in roughly equal

9

financial positions for the rest of their lives. *See In re Marriage of Wright*, 179 Wn. App. 257, 262, 319 P.3d 45 (2013). When that is accomplished in part through maintenance, the court must consider each spouse's anticipated postdissolution earnings. *See id.*

Given Ms. Glover's monthly gross income of $5,645, the court would equalize their gross incomes if it attributed a gross income to Mr. Glover of $8[2]. Since Mr. Glover's gross monthly income at the time of trial was $8,265 earned, and $10,765 after disability payments, it is clear that the court deeply discounted Mr. Glover's disability payments in setting the amount of maintenance. The court's letter ruling limited payment of maintenance to five years at most, and the decree sets a termination date of the end of April 2018. No abuse of discretion is shown.

---

[2] One arrives at an equalizing maintenance payment with the following calculation:

$M = [S_1 \text{ (income of higher earning spouse)} - S_2 \text{ (income of lower earning spouse)}] \div 2$

To figure out the income the court implicitly imputed to $S_1$ from the $1,600 it ordered as maintenance, with an objective of equal treatment, modify that formula:

If $(S_1 - S_2) \div 2 = M$, then

$S_1 - S_2 = 2M$, and then

$S_1 = 2M + S_2$

Using Ms. Glover's income and the $1,600 maintenance ordered, $S_1 = $5,645 + ($1,600 \times 2)$, or $8,845.

*The trial court did not abuse its discretion in dividing the
parties' property*

Mr. Glover next contends the court abused its discretion in rejecting his request for a disproportionate division of the community property in his favor.

"Property divisions lie firmly within the sound discretion of the trial judge. 'Trial court decisions in dissolution proceedings will seldom be changed on appeal. The party who challenges a decision in a dissolution proceeding must demonstrate that the trial court manifestly abused its discretion.'" *In re Marriage of Muhammad*, 153 Wn.2d 795, 808, 108 P.3d 779 (2005) (Sanders, J., dissenting) (quoting *In re Marriage of Stenshoel*, 72 Wn. App. 800, 803, 866 P.2d 635 (1993)).

As already discussed, the trial court was not persuaded that Mr. Glover is at risk of any earnings loss beyond what has already occurred. Its findings are supported by substantial evidence. We do not reweigh evidence or reassess witness credibility. *In re Welfare of Ca.R.*, 191 Wn. App. 601, 609, 365 P.3d 186 (2015).

And as already observed, the trial court had a tenable basis for attaching little if any weight to Ms. Glover's postseparation inheritance, since the community received the full benefit of her earlier inheritance. Again, no abuse of discretion is shown.

*The trial court did not abuse its discretion in reducing the
equalization payment to a judgment*

Finally, Mr. Glover contends the trial court abused its discretion when it refused his request to effectuate the equalization payment through transfers of retirement assets.

11

His only explanation for how this constituted an abuse of discretion is that the court "fail[ed] to adequately examine the impact of the Appellant's disabilities." Br. of Appellant at 20-21. We have already rejected that argument.

Mr. Glover also argues that Ms. Glover was willing to accept retirement assets, selectively citing trial testimony in which she said she would be amenable to receiving *some* of the equalization obligation through retirement account transfers.[3] Br. of Appellant at 22 n.2. And the equalization payment under discussion in Ms. Glover's testimony was that reflected in her scheduling of the assets, which was much more than $53,630. *See, e.g.*, RP at 213 (contemplating an equalization obligation in the $200,000-plus range). The equalization payment proved to be less because the trial court *did* shift retirement assets to Ms. Glover: it shifted $92,930 of Mr. Glover's Transamerica retirement accounts.

Suffice it to say that if Ms. Glover were truly amenable to receiving the remaining $53,630 in retirement transfers, we wouldn't need to address this issue on appeal. We

---

[3] Asked how the court should address a payment to her, she answered:

> I can't imagine it would be hard to come up with, like, cash to pay all of that in. I'm more than willing to do it through the accounts and stuff. I would like some of it to be where I can put it towards buying a house.

RP at 171. Mr. Glover quotes only the second sentence of this response. Later, Ms. Glover testified she didn't want all of the equalization to be retirement transfers.

No. 34145-3-III
*In re Marriage of Glover*

also observe that Mr. Glover made this and other arguments to the court in a motion for reconsideration, which was denied. Here, too, no abuse of discretion is shown.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

13